# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**DARYL BOWLING,**

     *Plaintiff,*

     v.

**DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONAL SERVICES,**
*et al.,*

     *Defendants.*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**Case No. 1:23-cv-01785-JRR**

## <u>MEMORANDUM OPINION</u>

Plaintiff Daryl Bowling filed this action against Defendants Maryland Department of Public Safety and Correctional Services ("DPSCS"); and Robert Green, Annie Harvey, Christopher Smith, Wesley Mahar, Ama Dwumah, and Fonda Lomax (collectively the "Individual Defendants"). (ECF No. 30; "First Amended Complaint.") Pending before the court is Defendants' Motion to Dismiss. (ECF No. 28; "the Motion").[1] The court has read the parties' papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

---

[1] The full title of the Motion is "Defendants' Opposition to Plaintiff's Motion to File Amended Complaint or in the Alternative, Motion to Dismiss." On April 18, 2024, after Defendants DPSCS, Green, Harvey, and Smith filed the Motion, the court granted Plaintiff leave to file a first amended complaint, which added four Defendants Mahar, Aderinoye, Dwumah, and Lomax. (ECF Nos. 29 and 30.) Therefore, the court addresses here the alternative motion to dismiss. As discussed below, the court addresses the sufficiency of the First Amended Complaint as to all Defendants. *See* Section III, *infra.*

I.     **BACKGROUND**[2]

At all times relevant, Plaintiff was incarcerated at Maryland Correctional Institution-Jessup ("MCI-J").[3]  (ECF No. 30 ¶ 1.)  The Individual Defendants are employees of DPSCS, the Maryland Division of Correction ("DOC"), or Maryland Correctional Institutional-Jessup ("MCI-J").[4]  *Id.* ¶¶ 6–12.  Green is Secretary of DPSCS.  *Id.* ¶ 6.  Harvey is Commissioner of DOC.  *Id.* ¶ 7.  Smith is Warden of MCI-J.  *Id.* ¶ 8.  Mahar is Lieutenant at MCI-J.  *Id.* ¶ 9.  Aderinoye is a Sergeant at MCI-J.  (ECF No. 30 ¶ 10.)  Dwumah is a Correctional Officer at MCI-J.  *Id.* ¶ 11.  Lomax is a Sergeant and Officer at MCI-J.  *Id.* ¶ 12.  This action arises out of an alleged attack on Plaintiff that occurred while he was incarcerated at MCI-J, a DPSCS DOC prison.  (ECF No. 30 ¶¶ 14–15.)

Plaintiff alleges that on February 11, 2022, Sergeant Aderinoye placed Plaintiff in a housing unit with members of the Black Guerilla Family, including Marlon Montes.  (ECF No. 30 ¶ 24.)  Two days later, on February 13, 2022, Plaintiff was using the phone in his housing unit and an unknown individual approached him from behind and stabbed him repeatedly.  *Id.* ¶¶ 25–26.  Although Correctional Officer Dwumah was assigned to the housing unit where the incident occurred, she was not present during the alleged attack because "she went to the bathroom."  *Id.* ¶ 28.  Plaintiff alleges there were no correctional officers present to prevent, intervene, or apprehend the individual who stabbed Plaintiff.  *Id.* ¶ 27.  Following the attack, Plaintiff was admitted to the hospital for treatment of his stab wounds, rib fractures, and left lower lobe laceration.  *Id.* ¶ 33.

Plaintiff alleges that "Defendants knew or should have known that the Offender Case Management System (OCMS) utilized by the Defendants indicated that [Plaintiff] should be kept

---

[2] For purposes of resolving the pending motions, the court accepts as true all well-pled facts set forth in the First Amended Complaint.  (ECF No. 30.)  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).
[3] Plaintiff is currently an inmate at Maryland Correctional Institution-Hagerstown.  (ECF No. 30 ¶ 4.)
[4] MCI-J is an institution of the DOC, and the DOC is a unit of the DPSCS.  (ECF No. 30 ¶ 5.)

separate from inmate Marlon Montes and other members of the Black Guerilla Family due to prior assaults and threats to his safety." (ECF No. 30 ¶ 17.) Plaintiff contends that Defendants failed to review and/or adhere to the OCMS, and "failed to institute proper inmate screening and classification processes, fail[ed] to control the existence of contraband weapons, and fail[ed] to intervene in the attack itself." Plaintiff alleges that, as a result of Defendants' failures, he was attacked. (ECF No. 30 ¶¶ 18, 34.)

The First Amended Complaint asserts three counts against all Defendants: Violation of 42 U.S.C. § 1983—Failure to Protect (Count I); Violation of 42 U.S.C. § 1983—Failure to Intervene (Count II); and Intentional Infliction of Emotional Distress ("IIED") (Count III). (ECF No. 30 at 7–10.) Defendants move to dismiss the First Amended Complaint on grounds of sovereign immunity and failure to state a claim for which relief can be granted .

## II.  **LEGAL STANDARDS**

### **Federal Rule of Civil Procedure 12(b)(1)**

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). The defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). "Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big*

*Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

## Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

III.   <u>**ANALYSIS**</u>

As an initial matter, as set forth in footnote 1, *supra,* Defendants DPSCS, Green, Harvey, and Smith filed the instant Motion before the court granted Plaintiff leave to file his (pending) first amended complaint, which added Defendants Mahar, Aderinoye, Dwumah, and Lomax.  (ECF No. 30.)  "[T]here are instances in which '*sua sponte* dismissals of complaints under Rule 12(b)(6) are appropriate.'"  *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002)); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. Oct. 2020 update) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district court judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim . . . .").  "Importantly, district courts may only exercise their authority to *sua sponte* dismiss inadequate complaints if 'the procedure employed is fair to the parties.'"  *Robertson*, 989 F.3d at 291 (quoting 5B Wright & Miller, Federal Practice and Procedure § 1357).  "Namely, the party whose complaint stands to be dismissed must be 'afforded notice and an opportunity to amend the complaint or otherwise respond.'"  *Id.* (quoting *Chute*, 281 F.3d at 319).

Here, the court granted Plaintiff leave to file a first amended complaint and ordered that the motion to dismiss set forth in ECF No. 28 would apply to the First Amended Complaint upon the docketing of same.  (ECF No. 29.)  Although the newly added Defendants did not file the Motion, the Motion addresses dismissal of the First Amended Complaint as against all Defendants.  Plaintiff also filed a response to the instant Motion and substantively addressed the pending claims against all Defendants contained in the First Amended Complaint.  (ECF No. 31.)  Accordingly, the court is satisfied that Plaintiff was "afforded notice and an opportunity to amend the complaint

or otherwise respond." *See Robertson, supra.* Therefore, the court will consider the sufficiency of the First Amended Complaint against all Defendants.

### A.      Federal Rule of Civil Procedure 12(b)(1)

### 1.      Eleventh Amendment Immunity

Defendants argue, and Plaintiff does not dispute, that Plaintiff's claims should be dismissed as to DPSCS and the Individual Defendants in their official capacities because they are immune under the Eleventh Amendment.  (ECF No. 28-1 at 11.)  The court agrees.

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. AMEND. XI.   "While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* MD. CODE, ANN., STATE GOV'T, §§ 12–101, *et seq.*, it has not waived its immunity under the Eleventh Amendment to suit in federal court."  *Dixon v. Baltimore City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003), *aff'd*, 88 F. App'x 610 (4th Cir. 2004); *see Taylor v. Somerset Cnty. Commissioners*, No. CV RDB-16-0336, 2016 WL 3906641, at *5 (D. Md. July 19, 2016) ("Although the [Maryland Tort Claims Act ("MTCA")] represents a limited waiver of sovereign immunity, the MTCA has no effect on the immunity afforded by the Eleventh Amendment for suits in federal courts.").  Additionally, "for purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity."  *Ballenger v. Owens*, 352 F.3d 842, 844–45 (4th Cir. 2003) (citations omitted).  That notwithstanding, "the Eleventh Amendment does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief

designed to remedy ongoing violations of federal law." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001).   This is known as the *Ex parte Young* doctrine.

Under the *Ex parte Young* doctrine, "a federal court has jurisdiction over a suit against a state officer to enjoin official actions that violate federal law, even if the State itself is immune from suit under the Eleventh Amendment." *Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261, 288 (1997).   "The exception is premised upon the notion, sometimes called a 'fiction,' that when a State officer violates federal law, he is stripped of his official character, thus losing the 'cloak' of State immunity." *Bragg*, 248 F.3d at 292 (quoting *Coeur D'Alene Tribe*, 521 U.S. at 281, 288) (internal citations omitted)).   "Even though 'the State itself will have a continuing interest in the litigation whenever State policies or procedures are at stake,' a court decree enjoining a State officer from committing future violations of federal law generally will not upset the careful federal balance established by the Constitution and confirmed by the Eleventh Amendment." *Id.* (quoting *Coeur d' Alene Tribe*, 521 U.S. at 269).   "To preserve this balance, however, this court 'must ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law.'" *Id.* (quoting *Coeur D'Alene Tribe*, 521 U.S. at 269).   Accordingly, "the court must evaluate the degree to which the State's sovereign interest would be adversely affected by a federal suit seeking injunctive relief against State officials, as well as the extent to which *federal*, rather than State, law must be enforced to vindicate the federal interest." *Id.* at 293.

With respect to DPSCS, the Maryland Department of Public Safety and Correctional Services is an agency of the State of Maryland.   MD. CODE, ANN., CORR. SERVS. § 2-101; *see Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) ("[T]he Maryland Department of Public Safety and Correctional Services is undoubtedly an arm of the

state . . . ."); *Dep't of Pub. Safety & Corr. Servs. v. Doe*, 439 Md. 201, 207 n.2 (2014) (stating that DPSCS is "an agency of the State"). Accordingly, DPSCS enjoys sovereign immunity under the Eleventh Amendment. As such, the court lacks subject matter jurisdiction to hear Plaintiff's claims against DPSCS because they are barred by sovereign immunity.[5]

Because the Individual Defendants sued in their official capacities are viewed as the State for purposes of sovereign immunity,[6] the court's inquiry with respect to these claims begins with the *Ex parte Young* doctrine. Under the *Ex parte Young* doctrine, the first threshold to hold an individual defendant liable for official acts is an allegation of an ongoing constitutional violation. *See Biggs v. North Carolina Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020) (explaining that "[t]o determine if this exception applies, [the court] consider[s] 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective'") (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff offers no allegations of current or ongoing constitutional violations by the Individual

---

[5] Defendants also argue that Plaintiff cannot maintain a 42 U.S.C. § 1983 claim against DPSCS because it is not a "person" as defined in the statute. (ECF No. 28-1 at 5.) Defendants are correct.

> 42 U.S.C. § 1983 provides:
>> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . ."

"Neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1980); *see Chin v. City of Balt.*, 241 F. Supp. 2d 546, 548 (D. Md. 2003) ("With respect to the § 1983 claim . . . a state agency is not a 'person' as the term is used in 42 U.S.C. § 1983. For that reason, a state agency cannot be sued under § 1983."); *Francis v. Maryland*, No. CV ELH-21-1365, 2023 WL 2456553, at *16 (D. Md. Mar. 10, 2023) ("[T]he claims against the State and the Individual Defendants in their official capacities fail as a matter of law. Notably, neither a State nor its officials acting in their official capacities are 'persons' under § 1983 in a suit for damages.") (citations omitted).

[6] The Individual Defendants are employees of DPSCS, DOC, and MCI-J. (ECF No. 30 ¶¶ 6-12.) MCI-J is an institution of the DOC, and the DOC is a part of the DPSCS. Therefore, the Individual Defendants as employees of DPSCS, DOC, and MCI-J acting in their official capacities are entitled to Eleventh Amendment Immunity. *Clark v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 247 F. Supp. 2d 77, 775 (D. Md. 2003)

Defendants.  Instead, Plaintiff's allegations pertain to Individual Defendants' past behavior that he contends violated his constitutional rights.  Accordingly, this action does not fall within the *Ex parte Young* exception; Plaintiff's claims will be dismissed against Individual Defendants sued in their official capacities on the basis of Eleventh Amendment immunity.

In sum, the Motion will be granted as to Counts I, II, and III as against DPSCS and Individual Defendants in their official capacities.

### 2. State Sovereign Immunity

Defendants argue that Plaintiff's IIED claim also fails because Individual Defendants are immune under the Maryland Tort Claims Act ("MTCA"), MD. CODE ANN., STATE GOV'T ("SG") §§ 12-101, *et seq.*  (ECF No. 28-1 at 15.)[7]

State sovereign immunity "is a broad[] doctrine that 'bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it.'"  *Williams v. Morgan State Univ.*, 850 F. App'x 172, 174 (4th Cir. 2021) (quoting *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019)); *see Stern v. Bd. Of Regents, Univ. Sys. of Md.*, 380 Md. 691, 700 (2004) (explaining that the "[t]he doctrine of sovereign immunity has long been recognized as applicable in actions against the State of Maryland and its official representatives.").  "[W]hen a governmental agency or actor can, and

---

[7] As an initial matter, Plaintiff appears to sue all Individual Defendants in their official and individual capacities. Although the "official capacity"/"individual capacity" distinction is material in non-state law claims (*i.e.*, Section 1983), there is no distinction between individual and official capacities with regard to state common law or state constitutional claims as a matter of Maryland law. *Ritchie v. Donnelly*, 324 Md. 344, 375 (1991); *see Higginbotham v. Pub. Serv. Comm'n of Md.*, 412 Md. 112, 130 (2009) (noting that in the context of "intentional tort actions asserted against Maryland public officials . . . . it is of no consequence whether the Maryland public official is sued in his or her 'official' capacity or 'individual' capacity"). As discussed, Individual Defendants sued in their individual capacities in Counts I, II, and III are not entitled to Eleventh Amendment immunity. *See Fisher v. Hogan*, No. CV DKC-19-893, 2019 WL 6895584, at *2 (D. Md. Dec. 18, 2019) ("When defendants are sued in their individual capacity, they are not immune to suit under the Eleventh Amendment"). As discussed in this section, to the extent Plaintiff seeks to hold Individual Defendants liable in any capacity in Count III, they are immune under the MTCA. *See* Section III.A.2, *supra.*

does, avail itself of the doctrine of sovereign immunity, no contract or tort suit can be maintained thereafter against it unless the General Assembly has specifically waived the doctrine." *Stern,* 380 Md. at 701.  "[T]he question of waiver of sovereign immunity by a state constitutional provision or statute is a matter of state law, 'as to which the decision of the [state's highest court] is controlling.'" *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Palmer v. Ohio*, 248 U.S. 32, 34 (1918)).

Pursuant to the MTCA, State personnel "are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence."  MD. CODE ANN., CTS. & JUD. PROC. ("CJP") § 5-522; *see Rodriguez v. State*, 218 Md. App. 573, 615 (2014) ("When we read SG § 12-104 and CJP § 5-522 together, it is clear that State personnel are immunized for their tortious conduct committed within the scope of their public duties, unless that conduct was . . . committed 'with malice or gross negligence[.]'") (quoting CJP § 5-522(a)(4)(ii)); *Lee v. Cline*, 384 Md. 245, 266 (2004) (holding that MTCA immunity encompasses constitutional torts and intentional torts).

Maryland courts have consistently defined "malice" as "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Barbre v. Pope*, 402 Md. 157, 182 (2007) (citations and quotation marks omitted).  Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Id.* at 187 (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635 (1985)).  Stated differently, "a wrongdoer is guilty of gross

negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.*

In order to overcome MTCA immunity at the pleading stage, a complaint must "sufficiently allege[] malice or gross negligence." *Barbre*, 402 Md. at 181–82. "Merely asserting that an act was done maliciously, or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive does not suffice." *Elliott v. Kupferman*, 58 Md. App. 510, 528 (1984); *see Barbre*, 402 Md. at 188 (explaining "conclusory allegations of gross negligence were not enough to bring the claim outside of the immunity and non-liability provisions of the MTCA"). Instead, "[t]o overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious." *Elliott,* 58 Md. App. at 528. "Plaintiffs face a high standard when pleading malice and conclusory allegations are insufficient." *McDaniel v. Maryland*, 2010 U.S. Dist. LEXIS 84784, 2010 WL 3260007, at *8 (D. Md. Aug. 18, 2010). Likewise, conclusory allegations of gross negligence are insufficient to overcome MCTA immunity at the Rule 12(b)(6) stage. *See Barbre*, 402 Md. at 188 (explaining "conclusory allegations of gross negligence were not enough to bring the claim outside of the immunity and non-liability provisions of the MTCA").

Here, Plaintiff alleges:

> The acts of the Defendants as set forth above were both extreme and outrageous. The Defendants intended to cause, or acted in reckless disregard of the probability that they would cause, severe emotional distress to Plaintiff.

> The misconduct described above was undertaken with malice, willfulness, and reckless indifference to Mr. Bowling's rights.

> The Defendants failure to adhere to the housing protocols in the OCMS and then subsequently leaving the housing unit without any supervision for a period time sufficient to allow the Plaintiff to be attacked is evidence of gross negligence.

11

> Defendant Adekunle Aderinoye was grossly negligent when he transported the Plaintiff to a housing unit where, according to OCMS, there were known enemies and a substantial risk to the Plaintiff's health and safety.
>
> Defendant Ama Dwumah was grossly negligent when she left the housing unit to use the bathroom, without ensuring that another correctional officer was available to monitor and supervise the unit in her absence.
>
> This conduct was both extreme and outrageous. An prison housing unit without supervision of a correctional officer is outrageous and leaves open the opportunity for criminal actions.
>
> The Plaintiff would not have been severely attacked had he not been placed on this housing unit. The severity of his injuries caused significant emotional distress. The Plaintiff was rushed to Shock Trauma and a tube was placed in his side due to internal bleeding. He subsequently needed surgery to treat the underlining injuries.

(ECF No. 30 ¶¶ 47–53.)[8]

Construed in the light most favorable to Plaintiff and taken as true, Plaintiff's allegations as to malice and/or gross negligence are conclusory and, therefore, insufficient. Plaintiff alleges he was injured because Defendants failed to review and/or adhere to the information provided in the OCMS, and failed to properly supervise the housing unit. No allegation suggests that any of the Individual Defendants acted with reckless and/or thoughtless disregard of the consequences to the rights of Plaintiff. With respect to malice, Plaintiff's allegations fare no better. The First Amended Complaint contains no allegations to suggest that any of the Individual Defendants "actually and subjectively intended to do [him] wrong or harm." *See Andrews v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. 1:23-CV-00172-JMC, 2024 WL 520038, at *10 (D. Md. Feb. 9, 2024) ("Plaintiffs do not allege that any Defendants actually and subjectively intended to do them wrong or harm, and Plaintiffs have therefore failed to sufficiently plead malice sufficient to

---

[8] Plaintiff does not allege that any of the Individual Defendants acted outside the scope of their employment duties.

overcome the MTCA's notice requirements."); *Taylor v. Somerset Cnty. Commissioners*, No. CV RDB-16-0336, 2016 WL 3906641, at *6 (D. Md. July 19, 2016) ("As Plaintiff omits any allegations that Parrish "actually and subjectively intended to do wrong or harm," she has not sufficiently alleged that Parrish acted with the requisite malice.").  Indeed, the First Amended Complaint lacks any allegation to support a conclusion that any of the Individual Defendants' actions were "evil" or fueled by ill intent.  Conclusory allegations that "Defendants intended to cause, or acted in reckless disregard of the probability that they would cause, severe emotional distress to Plaintiff" are insufficient to overcome MTCA immunity.  *See Elliott*, 58 Md. App. at 528, *supra.*

Accordingly, Individual Defendants are entitled to immunity under the MTCA for Plaintiff's IIED claim (Count III).  *See Carter v. Bowie State Univ.*, No. GJH-20-2725, 2022 WL 717043, at *10 n.11 (D. Md. Mar. 9, 2022) (dismissing IIED claim asserted against defendant in his personal capacity pursuant to MTCA immunity); *Est. of Leysath v. Maryland*, No. GJH-17-1362, 2018 WL 1225087, at *5 (D. Md. Mar. 6, 2018) (dismissing Maryland tort claims against correctional officers in their individual capacities pursuant to MTCA immunity).  Accordingly, the Motion will be granted as to Count III as against all Defendants.

### B. Federal Rule of Civil Procedure 12(b)(6)

#### 1. 42 U.S.C § 1983

The First Amended Complaint sets forth two claims pursuant to 42 U.S.C. § 1983—failure to protect and failure to intervene, both alleged as violations of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress. . . ."

42 U.S.C. § 1983.  Section 1983 does not, standing alone, provide substantive rights; rather, it is "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To state a claim under section 1983, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

Claims brought pursuant to § 1983 require a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (holding that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Therefore, respondeat superior liability does not exist under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### 2.    Supervisory Liability

Defendants argue that Plaintiff's § 1983 claims are subject to dismissal as against Defendants Green, Harvey, Smith, Mahar, and Lomax because Plaintiff fails to allege how any Defendant is personally responsible for any alleged constitutional violation.  (ECF No. 28-1 at 10–11.)  Plaintiff counters that Individual Defendants' roles and responsibilities "required them to have either actual or constructive knowledge of whether the policies of OCMS are being followed

in order to prevent a pervasive and unreasonable risk of constitutional injury." (ECF No. 31 at 3.) Plaintiff does not appear to dispute that he fails to allege how any Individual Defendant is responsible, and instead urges that "the discovery process is the appropriate vehicle to flush out the true extent of supervisory liability and it would be premature to grant a dismissal at this juncture." *Id.*

As referenced above, it is well established that the doctrine of respondeat superior does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782–83 (4th Cir. 2004) (noting that there is no respondeat superior liability under § 1983 and plaintiff "must demonstrate that the Board was aware of the constitutional violation and either participated in, or otherwise condoned, it"). "Indeed, a public official or agent 'may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.'" *Burley v. Balt. Police Dep't*, 422 F. Supp. 3d 986, 1032 (D. Md. 2019) (quoting *Iqbal*, 556 U.S. at 676). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Without subjective knowledge, a prison official is not liable. *Farmer v. Brennan,* 511 U.S. 825, 846 (1994).

"To state a supervisory liability claim, a plaintiff must allege (1) 'that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff,' (2) 'that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) 'that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" *Valentine v. PrimeCare Medical, Inc.,* 697 F. Supp. 3d 431, 441 (D. Md. 2023)

(quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).   Liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"   *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

The United States Court of Appeals for the Fourth Circuit further explained supervisory liability in *Evans v. Chalmers*:

> To begin with, the Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor can be held liable only for "his or her own misconduct." *Id.* at 677, 129 S.Ct. 1937. Yet the complaints in this case repeatedly allege that the so-called supervisory defendants violated plaintiffs' constitutional rights on the theory that they "knew or should have known" about their subordinates' conduct. This directly contradicts *Iqbal*'s holding that such allegations, standing alone, cannot give rise to supervisory liability.
>
> Moreover, the *Iqbal* Court explained that in order to state a claim for supervisory liability, "a plaintiff must plead that each [supervisory] defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676, 129 S.Ct. 1937 (emphases added); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250, 1252–53 (10th Cir. 2008) (dismissing supervisory liability claim where complaint failed to "isolate the allegedly unconstitutional acts of each defendant"). The plaintiffs here, however, have roped in a number of Durham city officials without pleading any allegedly improper individual actions.
> …
> The purpose of requiring a plaintiff to identify how "each [supervisory] defendant, through the official's *own individual actions*, has violated the Constitution," *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937 (emphases added), is not to erect some formalistic rule that a complaint must mention each defendant by name some particular number of times. The requirement is instead designed to ensure that the serious burdens of defending against this sort of lawsuit are visited upon a departmental supervisor only when the complaint "plausibly suggest[s]" that the supervisor engaged in "his

or her own misconduct." *Id.* at 681, 677, 129 S.Ct. 1937 (emphasis
added).

703 F.3d 636, 661–62 (4th Cir. 2012) (Wilkinson, J., concurring).  In sum, "[i]f a plaintiff has not

alleged any personal connection between a defendant and a denial of constitutional rights, the

claim against that defendant must fail."  *Francis v. Maryland*,  No. CV ELH-21-1365, 2023 WL

2456553, at *18 (D. Md. Mar. 10, 2023).

Here, drawing all reasonable inferences in his favor and accepting all well-pled facts as

true, Plaintiff's First Amended Complaint fails to support a reasonable conclusion that supervisory

liability is appropriate in this action.  Plaintiff fails to allege any facts to suggest that Defendants

Green, Harvey, Smith, Mahar, and Lomax were personally aware of the alleged constitutional

violations, and "either participated in, or otherwise condoned, it."  *Love-Lane*, 355 F.3d at 783.

In fact, Defendants Green, Harvey, Smith, and Mahar are not mentioned anywhere in the factual

allegations of the First Amended Complaint.

Plaintiff's allegation that Lomax "knew or should have known whether there was a

correctional officer on the housing unit at the time of the assault" is insufficient to support

supervisory liability.  *See Evans v. Chalmers*, 703 F.3d 636, 661 (4th Cir. 2012) (Wilkinson, J.,

concurring) ("[T]he complaints in this case repeatedly allege that the so-called supervisory

defendants violated plaintiffs' constitutional rights on the theory that they "knew or should have

known" about their subordinates' conduct. This directly contradicts *Iqbal*'s holding that such

allegations, standing alone, cannot give rise to supervisory liability.").  Additionally, the First

Amended Complaint contains no allegations to suggest that Lomax had knowledge that an attack

was to or would occur, or was otherwise actually aware that Sergeant Aderinoye placed Plaintiff

in a housing unit with members of the Black Guerilla family and/or that Correctional Officer

Dwumah left the housing unit with no supervision. *See Fishback v. Maryland*, No. 22-CV-00833-

17

LKG, 2023 WL 1995411, at *7 (D. Md. Feb. 14, 2023) (dismissing § 1983 claim based upon supervisory liability where the plaintiff failed to allege facts to suggest that the warden "(1) had knowledge that an attack would occur; (2) knew the assailant possessed a knife; (3) was located anywhere near Officer McKenzie, or the location where Plaintiff was attacked; or (4) was otherwise privy to Officer McKenzie's alleged conduct"); *Toomer v. Balt. City Det. Ctr.*, No. CIV.A. DKC 12-0083, 2014 WL 4678712, at *6 (D. Md. Sept. 18, 2014) ("Even crediting Plaintiff's allegations that 'many of these new guards' were corrupted by BGF and that Defendants Oliver, France, and Fernandez were aware of this reality at BCDC, such allegations do not establish that the three Defendants knew that Officer Willies was engaged in conduct that posed a pervasive risk of constitutional injury to Mr. Toomer."); *Anderson v. Warden*, No. CIV.A. PWG-14-216, 2014 WL 2916882, at *3 (D. Md. June 25, 2014) (dismissing supervisory liability claim under § 1983 where the plaintiff failed to "allege any facts suggesting that prison officials had reason to know and then disregard that he faced an excessive risk of harm"). Importantly, the First Amended Complaint sets forth no allegation of improper individual action by Individual Defendants Green, Harvey, Smith, Mahar, or Lomax.

Accordingly, the Motion will be granted as to Counts I and II as against Individual Defendants Green, Harvey, Smith, Mahar, and Lomax in their individual capacities for failure to state a claim.

### 3. Failure to Protect (Count I)

To the extent Plaintiff asserts a failure to protect claim in violation of the Eighth Amendment against Sergeant Aderinoye and Correctional Officer Dwumah based upon direct liability, the claim fails.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A deliberate indifference claims requires both objective and subjective elements: "(1) [Plaintiff] was exposed to a substantial risk of serious harm (the objective prong); and (2) the prison official knew of and disregarded that substantial risk to the inmate's health or safety (the subjective prong)." *Stevens v. Holler*, 68 F.4th 921, 931 (4th Cir. 2023).

The precise issue is whether the First Amended Complaint sufficiently alleges that Sergeant Aderinoye and Correctional Officer Dwumah knew that Plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Toomer v. Balt. City Det. Ctr.*, No. CIV.A. DKC 12-0083, 2014 WL 4678712, at *4 (D. Md. Sept. 18, 2014) (citation omitted) ("The Eighth Amendment's deliberate indifference standard protects an inmate only where it is shown that prison officials either intended for the inmate to be harmed or they knowingly disregarded an obvious threat to such an extent that one can only assume the officials intended the threat to be carried out."). Defendants argue that Plaintiff's failure to protect claim fails because "negligently failing to protect an inmate from an attack by another inmate does not state a claim under either the Eighth or Fourteenth Amendments." (ECF No. 28-1 at 12.) In response, Plaintiff contends that "Defendants knew that if OCMS was not properly used, then an inmate could suffer injury from an assault from an inmate that was supposed to be kept separate." (ECF No. 31 at 6.)

The "Eighth Amendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to a specific known risk of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). In *Farmer v. Brennan*, the United States Supreme Court explained:

In particular, as the lower courts have uniformly held, and as we have assumed, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Having incarcerated "persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct," having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be "restrictive and even harsh," but gratuitously allowing the beating or rape of one prisoner by another serves no "legitimate penological objectiv[e]," any more than it squares with " 'evolving standards of decency.'" Being violently assaulted in prison is simply not "part of the penalty that criminal offenders pay for their offenses against society."

It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety, a standard the parties agree governs the claim in this case.

511 U.S. 825, 833–35 (1994) (citations omitted).

"Negligence, however, does not give rise to a constitutional claim when the operative standard is deliberate indifference." *Brown v. Harris*, 240 F.3d 383, 391 (4th Cir. 2001); *Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006) ("[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."). Indeed, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for

20

commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837; *see Nichols v. Md. Corr. Inst.–Jessup*, 186 F. Supp. 2d 575, 581 (D. Md. 2002) (stating that deliberate indifference is "a high standard to meet" and that a "defendant who unsoundly, stupidly, or negligently fails to appreciate the risk is not liable . . . .") (citing *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)).

*Fishback v. Maryland* provides instruction.  There, the plaintiff filed suit against DPSCS, the State of Maryland, the warden, and a correctional officer for alleged violations of 42 U.S.C. § 1983.  No. 22-CV-00833-LKG, 2023 WL 1995411,*1 (D. Md. Feb. 14, 2023).  The plaintiff alleged that another prisoner, who was classified as a maximum-security prisoner and had a history of fighting with other prisoners, stabbed the plaintiff with a knife.  *Id.*  The plaintiff further alleged that there were no metal detectors or working security cameras where the attack occurred, and the inmate who attacked him walked past the security checkpoint guarded by the correctional officer with a knife.  *Id.*

In concluding that the plaintiff failed to state a § 1983 claim based on direct liability, the *Fishback* court reasoned:

> The Supreme Court has held that to succeed on a Section 1983 claim, a prisoner must prove that a defendant: (1) had knowledge of a substantial risk of serious harm; and (2) acted with deliberate indifference, a criminal recklessness standard, to the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 836-838 (1994). The Supreme Court has also expressly rejected the application of a solely objective test that would hold a defendant liable if he or she should have known of a risk of harm. *Id.* at 837. In addition, the Fourth Circuit has held that "deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006). This Court has also held that "[p]laintiff's general assertions of deficient institutional search procedures and staffing levels . . . provide no grounds to find that the State Defendants acted

with deliberate indifference." *Chavis v. Wolfe*, No. CIV.A. ELH-11-3104, 2012 WL 3610672, at *8 (D. Md. Aug. 22, 2012).

Here, Plaintiff alleges that, on the day he was attacked, the inmate assailant wore a short-sleeved shirt with an 8-inch knife tied around his wrist. Additionally, Plaintiff alleges that Officer McKenzie and other correctional officers failed to follow the governing regulations, failed to pat down or otherwise search Plaintiff's assailant, and failed to ensure the safety and security of the prisoners and staff at WCI.

Plaintiff further alleges that Warden Graham knew that WCI had no working cameras; that there were no metal detectors; and that the assailant had previously attacked other prisoners.

Taken as true, these allegations do not show that Warden Graham had knowledge of a substantial risk of serious harm to Plaintiff or to other prisoners. Plaintiff does not allege any facts to show that Warden Graham knew, either: that the assailant possessed a knife; the knife would be used to commit an attack on Plaintiff or other prisoners; or that Warden Graham was near the location where Plaintiff was attacked.

In addition, as this Court has previously held, "[P]laintiff's general assertions of deficient institutional search procedures and staffing levels . . . provide no grounds to find that the Defendants acted with deliberate indifference." *Chavis v. Wolfe*, 2012 WL 3610672, at *8. And so, Plaintiff's allegations that Warden Graham knew that WCI lacked working cameras and metal detectors are not sufficient to state a plausible Section 1983 claim.

*Id.* at *8.

Here, Plaintiff alleges:

On February 11, 2022, Sgt. Adekunle Aderinoye placed the Plaintiff in the same housing unit as Inmate Montes and other members of the Black Guerilla Family.

On or about February 13, 2022, Mr. Bowling was using the phone in his housing unit at/or around 9 am.

While Mr. Bowling was using the phone, an unknown individual approached him from behind and stabbed him repeatedly. This was a completely unprovoked attack by the unknown assailant.

22

> There were no correctional officers on the unit at the time of the assault to prevent, intervene, or apprehend the individual who stabbed Mr. Bowling.
>
> At the time of the assault, Correctional Officer Ama Dwumah was not on the housing unit because she went to the bathroom. When she returned from the bathroom, she noticed the injury to the Plaintiff. Officer Dwumah knew or should have known she should not have left the housing unit with no supervision while using the bathroom. Had there been proper supervision, the assault would not have occurred.

(ECF No. 30 ¶¶ 24, 28–29.)

Read liberally, Plaintiff's allegations do not plausibly make out a substantial risk of serious harm to Plaintiff that Sergeant Aderinoye and/or Correctional Officer Dwumah disregarded or regarding which they failed to take reasonable measures to address. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).   Importantly, Plaintiff fails to allege that either Sergeant Aderinoye or Correctional Officer Dwumah knew of a specific threat to Plaintiff and "then acted with deliberate indifference to that knowledge." *Chavis v. Wolfe*, No. CIV.A. ELH-11-3104, 2012 WL 3610672, at *8 (D. Md. Aug. 22, 2012) (dismissing failure to protect claim where the plaintiff failed to allege that the warden or lieutenant knew of a specific threat to the plaintiff's safety and acted with deliberate indifference to that knowledge); *McFadden v. Butler*, No. CV TDC-16-0437, 2018 WL 1394021, at *4 (D. Md. Mar. 19, 2018) ("Negligent failure to protect an inmate from an attack by another inmate does not violate the inmate's constitutional rights.") (citing *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987)); *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999) (noting that "the Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences. This is precisely why the Supreme Court has seen fit to stress that deliberate indifference requires 'more than ordinary lack of due care for the prisoner's interests or safety.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Plaintiff's general allegations of Defendants' failures to check and/or act in accordance with the OCMS do not suggest deliberate indifference. *See Chavis*, 2012 WL 3610672, at *8 ("[G]eneral assertions of deficient institutional search procedures and staffing levels similarly provide no grounds to find that the State Defendants acted with deliberate indifference").

Accordingly, the Motion will be granted as to Count I as against Individual Defendants Sergeant Aderinoye and Correctional Officer Dwumah in their individual capacities for failure to state a claim.

### 4.      Eighth Amendment – Failure to Intervene (Count II)

To the extent Plaintiff asserts a failure to intervene claim in violation of the Eighth Amendment against Sergeant Aderinoye and Correctional Officer Dwumah based upon direct liability, this, too, fails.

"In failure-to-protect cases, 'prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm.'" *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016) (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)). "But 'completely failing to take any action' to stop an ongoing assault on a prisoner can amount to deliberate indifference." *Id.* (quoting *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) and citing *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003) ("[A] correctional officer who stands by as a passive observer and takes no action whatsoever to intervene during an assault violates the [Eighth Amendment] rights of the victim inmate." )). "Thus, courts have found that 'a corrections officer's failure to intervene in a beating can be the basis of [§ 1983] liability' if the officer had a reasonable opportunity to act and 'simply refused to do so.'" *Raynor*, 817 F.3d at 128 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).

Here, Plaintiff makes no plausible allegation to suggest that Sergeant Aderinoye or Correctional Officer Dwumah unconstitutionally failed to intervene.  Stated differently, Plaintiff fails to allege facts to suggest that any Individual Defendant had a reasonable opportunity to act and simply refused to do so.  *See Raynor, supra; see Burley v. Balt. Police Dep't*, 422 F. Supp. 3d 986, 1031 (D. Md. 2019) (dismissing failure to intervene claim where the plaintiffs' allegations failed to suggest that the officer "was present at the relevant time and had 'specific knowledge' of his subordinates' unlawful acts in this matter"); *Shipley v. Disney*, No. CV SAG-21-3173, 2022 WL 2789076, at *7 (D. Md. July 15, 2022) ("[T]he Amended Complaint's factual allegations do not even put Bowman or James in a position where they could have observed the alleged violations of Plaintiff's constitutional rights, or 'stood by' while they occurred.").  Rather, Plaintiff alleges "[t]here were no correctional officers on the unit at the time of the assault to prevent, intervene, or apprehend the individual who stabbed [Plaintiff]."  (ECF No. 30 ¶ 27.)

Accordingly, the Motion will be granted as to Count II as against Individual Defendants Sergeant Aderinoye and Correctional Officer Dwumah in their individual capacities for failure to state a claim.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, Defendants' Motion to Dismiss (ECF No. 28) will be granted.

September 5, 2024                                            /S/

_____
Julie R. Rubin
United States District Judge